## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

| | |
|---|---|
| INTELLIPAYMENT, LLC              : | |
| : | |
| : | CIVIL ACTION NO. 2:15-cv-1566 |
| Plaintiff,     : | |
| : | |
| vs.                       : | **JURY TRIAL DEMAND** |
| : | |
| : | |
| MICHAEL C. TRIMARCO     : | |
| : | |
| Defendant.     : | |

-----------------------------------------------------------------x

### ORIGINAL COMPLAINT

IntelliPayment, LLC ("Plaintiff," "IntelliPayment," or the "Company") files this Original Complaint seeking damages and injunctive relief against Defendant Michael C. Trimarco ("Defendant" or "Trimarco") as follows:

### I.

### PRELIMINARY STATEMENT

The filing of this case is necessitated by, *inter alia*, Defendant's surreptitious theft of confidential, proprietary and privileged information without authorization. In short, Defendant gained access to Company accounts in order to review, intercept, monitor, and ultimately steal Company information, including privileged communications between the Company's CEO and its attorneys. Defendant's malicious actions violate federal law, and have caused serious harm to the Company. Apparently no stranger to secret takeover attempts, Defendant's latest endeavor comes on the heels of a scathing decision by New York Supreme Court Justice Emily Pines, in Suffolk County, which dismissed claims by Defendant for millions of dollars after the Court found that Defendant breached fiduciary duties, violated covenants of good faith and fair

dealing, and committed infidelity to the company he purportedly served by secretly engaging in activities to take over the company in question, even to the point of coaching or bribing employees to lie in order to hide his activities.[1]  Undeterred, Defendant has now commenced a similar scheme to seize control of IntelliPayment.  Accordingly, the Company is forced to bring this action to recover the damages it has suffered from Defendant's illegal actions, and to enjoin Defendant from further use or dissemination of the Company information, which has been unlawfully obtained by Defendant.

## II.

## PARTIES

**A.    Plaintiff**

1.    Plaintiff IntelliPayment is a limited liability company duly organized under the laws of the State of New York, with a principal place of business at 350 Fifth Avenue, 59th Floor, Empire State Building, New York, New York 10118.

**B.    Defendant**

2.    Defendant Michael C. Trimarco is an individual who, based on information and belief, resides at 120 Crystal Beach Blvd., Moriches New York, New York 11955.

## III.

## JURISDICTION AND VENUE

3.    This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because the claims in this action arise under the Constitution and laws of the United States.

4.    This Court has personal jurisdiction over Defendant, who is a resident of the State of New York.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a

---

[1] *See Trimarco v. Data Treasury Corp.*, 992 N.Y.S.2d 161 (Sup. Ct. - Suffolk Cty. 2013).

ORIGINAL COMPLAINT                                                                   Page 2

substantial part of the events giving rise to this action occurred in this judicial district, and Defendant resides within this district.

## IV.

### STATEMENT OF RELEVANT FACTS

A.       **The Company.**

5.       Founded in 2006, and headquartered in the Empire State Building, IntelliPayment has become the leading provider of bi-weekly payment products for the automobile lending industry.    The Company's accelerated-payment products and services aid customers in shortening the term of their loans through easy-to-budget payment planning, thereby allowing them to gain significant financial benefits.

6.       The Company was conceived by its CEO, Michael J. Cavuoti ("Cavuoti"), who joined together with his long-time friend, Defendant Trimarco, to start the business.  Scott Olsen ("Olsen"), also became involved.  Before founding the Company, Cavuoti, a graduate of Harvard University, spent over 14-years in the financial markets managing portfolios for Susquehanna Investment Group, Bank of America, and Goldman Sachs.

7.       Since the time the Company was formed, Cavuoti has personally managed and operated the Company.  Olsen had no involvement in overseeing or managing operations of the Company.  Likewise, Trimarco devoted virtually no time or attention to the development, management, or operation of the Company.

8.       Although each of Messrs. Cavouti, Trimarco and Olsen were originally owners of the entity, Olsen ceased to be an owner of the Company at the end of 2007.  And, by 2011, Trimarco, through various agreements, had his ownership reduced to a 5% stake.  In August 2014, Trimarco entered into an agreement whereby the Company purchased his remaining

ownership stake.  To that end, the Company paid and Trimarco accepted, tens of thousands of dollars in connection with that agreement, which he later repudiated.

**B.**     **The Company's Operating Agreement**

9.      Shortly after the Company was formed as a New York LLC, on or about September 6, 2006, Cavuoti, Trimarco and Olsen entered into an Operating Agreement. Pursuant to the terms of the agreement, the Company would be managed by its members, and all major operating decisions of the Company were to be made with a 2/3 majority of the membership interest in the Company.

10.     At the time the Operating Agreement was entered, the parties unanimously decided that Cavuoti would manage and run the ongoing business.  Olsen was to focus on sales and marketing, and Trimarco would be available for part-time consulting.  Pursuant to that decision, in actual fact, Cavuoti alone was responsible for the day-to-day operations and management of the Company.

**C.**     **Cavuoti Leads And Develops IntelliPayment.**

11.     Once IntelliPayment was formed, its business developed slowly.  Over the course of 2006 and 2007, sales for which Olsen was responsible failed to materializ.  Cavuoti, therefore, assumed that role.  The Company, during that period, however, continued to lose money. Ultimately, Olsen gave up.  At the end of 2007, Olsen forfeited his remaining interest and left the Company.  Similarly, Trimarco told Cavuoti he was "done" and that he would not put any more money in the Company.  As a result, Cavuoti was left to develop the business on his own.

12.     For the next several years, Cavuoti diligently pursued development of IntelliPayment, and did so with little to no compensation.  Through his efforts, by 2012, IntelliPayment began to realize its success.

**D.      Trimarco Unlawfully Invades The Company Email, Servers, And Computer Accounts, Including Cavuoti's Email Accounts**

13.      In Fall of 2014, Defendant embarked on a disruptive course of action designed to force the Company to increase the terms of the buyout of his previously held interest in the Company.  To do so, Defendant conspired with Olsen, who he conscripted to aid him in his plan. Before being approached by Defendant in 2014, Olsen had absolutely no involvement with the Company since leaving in 2007 when he ceased to be an owner.

14.      Despite Olsen having not been a member of the Company for nearly seven years, in September 2014, Defendant and Olsen "met" together and purported to "vote" as members of the Company to "remove" Cavuoti as the manager of the Company, and to appoint Defendant as the Company's sole manager.  Although such actions were without any legal effect, Defendant nonetheless proceeded to attempt to obtain access and gain control over the Company's banking accounts and computers based on "decisions" by Olsen and himself.

**1.      Bank of America: Defendant seeks control over, and online access to, the Company's bank accounts.**

15.      Since 2008, Bank of America has provided IntelliPayment with various banking and treasury services.  Cavuoti has at all times been the sole authorized signatory of IntelliPayment accounts at Bank of America.

16.      On October 1, 2014, Trimarco entered a Bank of America branch and falsely represented that he was the manager of IntelliPayment.  Defendant proceeded to open an account in IntelliPayment's name, and then linked the account to the Company's Bank of America accounts in order to gain unauthorized on-line access to the Company's accounts and financial information.  Defendant then proceeded to transfer funds from IntelliPayment's operating account to the account that he had just opened.

**ORIGINAL COMPLAINT**                                                        **Page 5**

17.     The following day, on October 2, 2014, Trimarco returned to the same Bank of America branch and sought to have himself added as a signatory on all of IntelliPayment's Bank of America accounts.  Defendant further sought to remove Cavuoti, the Company's CEO, as a signatory on the accounts.  Ultimately, the bank did not agree to remove Cavuoti as a signatory and Trimarco threatened to take legal action.

18.     As a result of Defendant's actions and repeated misrepresentations to the bank, on November 3, 2014, Bank of America notified the Company that it was terminating its banking relationship with the Company, and closing the Company's accounts on December 3, 2014.

19.     Despite repeated warnings to Defendant of the harm that he was causing, and demands by the Company and its counsel that he immediately cease and desist, on November 6, 2014, Defendant again contacted Bank of America to demand that he be added as a signatory on the Company bank accounts, and threatened action against the bank if it refused to acquiesce to Defendant's demands.

**2.      AppRiver: Defendant unlawfully gains access to Company email servers.**

20.     On November 10, 2014, Trimarco intentionally gained unauthorized access to the Company's Microsoft Exchange server, which is hosted by service provider Appriver Co. ("AppRiver").  To do so, Defendant intentionally misled the Company's service provider into believing that Defendant was Cavuoti.

21.     At approximately 10:45 AM CST, on November 10, an AppRiver support technician received a support call from an individual purporting to be "Mike" from IntelliPayment.  Defendant, pretending to be Cavuoti, stated that he needed his password changed for his email address mickey@intellipaymentplan.com.  That email account, however, belonged to Cavuoti – not Defendant.  Cavuoti never consented to allow Defendant access to that account.

**ORIGINAL COMPLAINT**                                                                                 **Page 6**

22.     The     IntelliPayment     accounts     mickey@intellipayment.com     and mickey@intellipaymentplan.com had been assigned administrator-level access at the time AppRiver received the call on November 10, 2014.  In accordance with AppRiver's security and authentication process, the technician sent a three-word random phrase to mickey@intellipaymentplan.com.  Defendant, who had covertly obtained unauthorized access to Cavuoti's email account, proceeded to read back to the technician the three words that had been emailed to Cavuoti's email address.

23.     Because Defendant had passed the security authentication step, albeit through deception, the AppRiver technician compiled with Defendant's request, and changed the password to one that would allow Defendant to log into AppRiver's customer portal, and access IntelliPayment's Microsoft Exchange server.

24.     Once Defendant had logged into the IntelliPayment portal, Defendant asked the technician how to promote a user from a regular user to an administrator-level user.  The technician informed Defendant how to do so.  Thereafter, Defendant also requested information and instruction on how to demote an administrator-level user to no longer have administrative rights.   Defendant was also informed of that process.

25.     In addition, Defendant requested instruction for how to add and remove an alias email address from a user's account.  In response, the AppRiver technician instructed Defendant how to do so.  The support technician further suggested to Defendant, who was believed to be Cavuoti, that he should update the verbal password for the account in the event that he might need assistance resetting a password in the future.

26.     Shortly thereafter, between approximately 10:54 and 11:10 AM CST, unauthorized access to the AppRiver customer portal was used to make several changes to

**ORIGINAL COMPLAINT**                                                              **Page 7**

IntelliPayment's account.  Among other things:  (1) Trimarco became IntelliPayment's primary contact; (2) Trimarco became IntelliPayment's billing contact; (3) administrator-level access was removed from Cavuoti's IntelliPayment administrators' accounts; and (4) a new email address, mike@intellipayment.com, was secretly created by Defendant and promoted to be the only user with account administrator-level access.  Defendant revised account settings on Cavuoti's email accounts to cause all email delivered to Cavuoti to be automatically forwarded to Defendant's own email account.

27.    The Company's Microsoft Exchange server contains extremely sensitive and confidential information, including IntelliPayment's business contacts, email, calendars, and all other data contained in Microsoft Exchange applications.  Having illegally obtained the ability to access the Company accounts, Defendant, without authority to do so, accessed the accounts. Defendant clandestinely reviewed, intercepted, and monitored the Company's confidential information, including privileged conversations between Cavuoti and attorneys for the Company, and published or otherwise disclosed that information to third parties.  In addition, Trimarco "archived," copied, downloaded, and otherwise stole the Company's entire Microsoft Exchange server including all emails, contacts, calendars, and other confidential information.

**3.    Rackspace and GoDaddy: Defendant illegally obtains access to the Company's Rackspace and GoDaddy accounts.**

28.    In addition to the Company's AppRiver accounts, Trimarco also illegally impersonated Cavuoti and others to obtain unauthorized access to Company accounts with Rackspace and GoDaddy, other service providers that manage IntelliPayment's computer servers and electronic information.

29.    Accessing the Rackspace servers allows one to view and access customer identities, personal and financial information, financial performance data, proprietary code, as

well as control IntelliPayment's database, web application, and everything that affects IntelliPayment's website, www.intellipayment.com, which is used by IntelliPayment's customers and employees.  Rackspace has confirmed that within a 24-hour period, spanning November 15 and 16, 2014, the Rackspace IntelliPayment account encountered 22 unexplained logins.

30.     In addition, Defendant illegally obtained administrator access over the Company's GoDaddy account, which controls nearly all of the Company's website domains, as well as certain Company email  accounts.   As with AppRiver, Defendant intentionally removed Cavuoti's administrative access to the GoDaddy account following Defendant's unauthorized access to that account.

31.     Only individuals with login credentials—including a username, password, and in some cases a "PIN" number—could access IntelliPayment accounts and computer servers hosted or provided by GoDaddy, AppRiver, and Rackspace.  The Company only granted authorized administrator rights and access, and applicable login credentials to Cavuoti, and other limited individuals who had reason to access the servers and accounts to perform maintenance tasks, when necessary, as part of day-to-day Company operations and affairs.

32.     Defendant, however, never received authorization to access IntelliPayment's AppRiver, Rackspace, or GoDaddy accounts, and did not request, receive or possess any authorized access credentials.  Furthermore, at no time did Defendant have consent to access, review or otherwise intercept and copy email information, or Cavuoti's confidential and privileged communications with attorneys.  Even as a member of IntelliPayment, Defendant never had such authorization or login credentials for any of these accounts.

33.     The Company has never had nor established a corporate policy permitting unrestricted access to, or the lack of confidentiality regarding, electronic communications of the

Company, its members, or its employees, including any on Company equipment or computing devices.  At all relevant times since the formation of the Company, Cavuoti had a reasonable expectation of confidentiality and privacy with respect to his IntelliPayment email accounts, and his business and personal communications therein.

E.  **The Damage Done**

34.    As a result of Defendant's illegal actions, unauthorized and deceitful access to the IntelliPayment's AppRiver and GoDaddy accounts, and other wrongful conduct, the Company has suffered significant harm and economic damages.  Among other things, the Company has been forced to expend significant resources to investigate the scope of Defendant's unauthorized access, assess the damage to the Company's servers and computer systems, take corrective measures to prevent further infiltration and theft of the Company's confidential information, and re-secure proper authority to access IntelliPayment's account.  Importantly, the Company has endured substantial business disruption, interference and cost associated in pursuing necessary legal action.

35.    Accordingly, the Company is compelled to bring this action to recover the damages it has suffered, and to enjoin Defendant from further use or dissemination of Company information that has been unlawfully obtained by Defendant.

**V.**

**CAUSES OF ACTION**

A.    **CLAIM ONE: Violation Of The Stored Communications Act, 18 U.S.C. §§ 2701-2712 (the "SCA")**

36.    Plaintiff repeats and re-alleges each of the allegations in Paragraphs 1 through 33 as if fully stated herein.

37.     The SCA prohibits any person from intentionally accessing, without authorization (or by exceeding a permissible authorization) a "facility" through which an electronic communication service is provided.  Email constitutes an electronic communication for purposes of the SCA.

38.     GoDaddy, Rackspace, and AppRiver, which host Company email accounts and its Microsoft Exchange servers, are each facilities and providers of electronic communication services.   In connection with their services, electronic communications sent to and from IntelliPayment's email accounts are placed in electronic storage on GoDaddy, AppRiver, and Microsoft Exchange computers or servers that are incidental to the transmission of such electronic communications, and those communications are stored for the purpose of backup protection.

39.     All of IntelliPayment's AppRiver and GoDaddy business accounts and servers have been configured to restrict open or public access.  Only individuals who have been provided login credentials may access designated accounts, or sections of the Company servers.

40.     Defendant has never had authorization to access IntelliPayment's AppRiver, Rackspace, or GoDaddy accounts, and was never provided access credentials.   Nor has Defendant ever requested credentials from Cavuoti or the Company.  Furthermore, at no time did Defendant have consent to access, review, or otherwise intercept and copy email information from Company email accounts, including Cavuoti's email accounts containing confidential and privileged communications with attorneys.  Even in the past, as a member of IntelliPayment, Defendant never had such authorization or login credentials for any of these Company accounts.

41.     Significantly, before deceitfully creating an email account for himself as part of his illegal efforts, Defendant did not maintain an IntelliPayment email account, corporate phone

line, or user ID for IntelliPayment's web application, and he was never engaged or otherwise involved in the day-to-day operations or management of the Company.

42.     Defendant illegally, and without authorization, accessed IntelliPayment's GoDaddy account, deceitfully acquired administrator rights, and removed Cavuoti's administrative access to the Company's GoDaddy account.   Likewise, Defendant lied and misrepresented his identity to gain unauthorized access to the Company's AppRiver account and Microsoft Exchange server.

43.     After infiltrating the Company's AppRiver account, Defendant altered and prevented authorized access to the account and the emails stored on the server by, among other things: (1) substituting Cavuoti with Trimarco as IntelliPayment's primary contact; (2) replacing James Williams with Trimarco as IntelliPayment's billing contact; (3) removing and disabling administrator-level access for the authorized IntelliPayment administrator credentials; and (4) secretly creating a new email address, mike@intellipayment.com, which he promoted to become the only user with administrator-level access rights.   Furthermore, Defendant "archived," copied, downloaded, and otherwise stole the Company's entire Microsoft Exchange server information, including all emails, contacts, calendars, and other confidential information.   Since then, Defendant has continued to possess and review the Company's emails and information and disclose the information to third-parties.

44.     As a result of Defendant's actions, all administrative access to the Company's email accounts hosted by AppRiver became blocked and suspended until such time that Cavuoti was able to re-acquire access and administrative rights.

45.     By surreptitiously, and intentionally accessing IntelliPayment's GoDaddy and AppRiver accounts, without any authorization and/or in excess of any permissible authorization, Defendant violated the SCA.

46.     As a result of Defendant's illegal and wrongful conduct, the Company has suffered economic damages and other harm.  Accordingly, the Company is entitled to recover its actual and consequential damages in an amount to be determined at trial, but not less than statutory damages specified in the SCA.  In addition, the Company is entitled to recover punitive damages because Defendant's conduct was willful, intentional and malicious.  Furthermore, the Company is entitled to recover its reasonable attorneys' fees and costs, as well as such injunctive and other equitable relief as may be appropriate.

**B.      CLAIM TWO: Violation Of The Omnibus Crime Control And Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2522 ("the Wiretap Act")**

47.     Plaintiff repeats and re-alleges each of the allegations in Paragraphs 1 through 44 as if fully stated herein.

48.     The Wiretap Act prohibits intentional interception, disclosure, or use of the contents of any electronic communications between two parties without the consent of one or both of the parties to the communication.  An email is an electronic communication for purposes of the Wiretap Act.

49.     As detailed above, Defendant intentionally accessed, without authorization, Cavuoti's email account (mickey@intellipaymentplan.com) and modified the account settings so that contemporaneous with the transmission of emails to Cavuoti, all incoming email to Cavuoti would automatically be forwarded to Trimarco's own email account.  In so doing, Defendant intentionally intercepted Cavuoti's electronic communications and committed violations of the Wiretap Act.

**ORIGINAL COMPLAINT**                                                      **Page 13**

50.     In addition, Defendant also violated the Wiretap Act by intentionally using or disclosing, or endeavoring to use or disclose, to third parties the contents of Cavuoti's emails without Cavuoti's consent.  Furthermore, Defendant did so while knowing or having reason to know that the information was obtained through the interception of wire, oral, or electronic communication, in violation of the Wiretap Act.

51.     As a result of Defendant's illegal and wrongful conduct, the Company has suffered economic damages and other harm.  Accordingly, the Company is entitled to recover its actual and consequential damages in an amount to be determined at trial, but not less than statutory damages specified in the Wiretap Act.  In addition, the Company is entitled to recover punitive damages because Defendant's conduct was willful, intentional and malicious.  Furthermore, the Company is entitled to recover its reasonable attorneys' fees and costs, as well as such injunctive and other equitable relief as may be appropriate.

## C.     CLAIM THREE: Violation Of The Computer Fraud And Abuse Act, 18 U.S.C. § 1030 (the "CFAA")

52.     Plaintiff repeats and re-alleges each of the allegations in Paragraphs 1 through 49 as if fully stated herein.

53.     The CFAA prohibits unauthorized access to computers and computer networks.

54.     As detailed above, in conducting its business, Plaintiff uses its AppRiver, Rackspace, and GoDaddy accounts and servers.  Each of these companies maintains a network of computers that stores computer information and data related to IntelliPayment and its business accounts.  Each of the computer servers provided by the service providers is a data storage facility, or communications facility, directly related to or operating in conjunction with a data processing device.

55.     In addition, these computer servers and accounts are "protected computers" under the CFAA because IntelliPayment uses these accounts and servers to conduct business across state lines and to engage in interstate commerce and communication.

56.     All of IntelliPayment's AppRiver, Rackspace, and GoDaddy business accounts and servers have been configured to restrict open or public access.  Only individuals who have been provided login credentials may access designated accounts, or sections of the Company servers.

57.     Defendant has never had authorization to access IntelliPayment's AppRiver, Rackspace, or GoDaddy accounts, and was never provided access credentials.  Nor did Defendant ever request credentials from Cavuoti.  Furthermore, at no time did Defendant have consent to access, review, or otherwise intercept and copy email information from Cavuoti's email accounts, including confidential and privileged communications with attorneys.  Even in the past, as a member of IntelliPayment, Defendant never had such authorization or login credentials for any of these Company accounts.

58.     Significantly, before deceitfully creating an email account for himself as part of his illegal efforts, Defendant did not maintain an IntelliPayment email account, corporate phone line, or user ID for IntelliPayment's web application, and he was never engaged or otherwise involved in the day-to-day operations or management of the Company.

59.     Defendant illegally, and without authorization, accessed and obtained administrator access without authorization to IntelliPayment's GoDaddy account, and he removed Cavuoti's administrative access to the GoDaddy account.  Likewise, Defendant lied and misrepresented his identity to gain unauthorized access to the Company's AppRiver account and Microsoft Exchange server.

60.     After infiltrating the Company's AppRiver account, Defendant altered and prevented authorized access to the account and the emails stored on the server by, among other things: (1) substituting Cavuoti with Trimarco as IntelliPayment's primary contact; (2) replacing James Williams with Trimarco as IntelliPayment's billing contact; (3) removing administrator-level access from the authorized IntelliPayment administrators' accounts; and (4) creating a new email address, mike@intellipayment.com, which he promoted to become the only user with administrator-level access.   Furthermore, Defendant "archived," copied, downloaded, and otherwise stole the Company's entire Microsoft Exchange server information, including all emails, contacts, calendars, and other confidential Company information.   Since then, Defendant has continued to possess and review the Company's emails and confidential information, and disclosed the information to third-parties.

61.     As a result of Defendant's actions, all administrative access to the Company's email accounts hosted by AppRiver became blocked and suspended until such time that Cavuoti was able to re-acquire access and administrative rights.

62.     Defendant knowingly and with intent to defraud impersonated Cavuoti and manipulated AppRiver, and GoDaddy into providing Defendant with access to IntelliPayment's secured servers and accounts.   In addition, Defendant knowingly and with intent to defraud accessed IntelliPayment's protected computer without authorization and/or by exceeding authorized access and obtained valuable proprietary information belonging to IntelliPayment, including IntelliPayment's most valuable asset—its customer base, which Defendant later attempted to sell to IntelliPayment's competitor for Defendant's own personal gain.

63.   By surreptitiously and intentionally accessing IntelliPayment's AppRiver and GoDaddy accounts, without any authorization and/or in excess of any permissible authorization, and engaging in the conduct alleged herein, Defendant violated the CFAA.

64.   As a result of Defendant's unauthorized and deceitful access to the IntelliPayment's AppRiver and GoDaddy accounts, and other wrongful conduct, IntelliPayment has been damaged and suffered losses.  Among other things, the Company has suffered lost revenue and consequential damages because of the service interruptions Defendant caused, and the Company has been forced to spend considerable resources investigating the scope of the unauthorized access, assess the damage to the Company's servers and computer system, take corrective measures to prevent the infiltration and gathering of confidential information, and to re-secure IntelliPayment's authorized access to the accounts.   Accordingly, the Company is entitled to recover its actual and consequential damages in an amount to be determined at trial which, in aggregate, is not less than $5,000.  In addition, the Company is entitled to recover punitive damages because Defendant's conduct was willful, intentional and malicious. Furthermore, the Company is entitled to recover its reasonable attorneys' fees and costs, as well as such injunctive and other equitable relief as may be appropriate.

## VI.

## **REQUEST FOR RELIEF**

65.   WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment in against Defendant awarding Plaintiff the following relief:

(1)   an order granting a preliminarily and permanent injunction that:
   a.   enjoins Defendant from accessing, or using any illegitimate IntelliPayment email account or holding himself out as the manager of IntelliPayment;
   b.   enjoins Defendant from possessing, using, or disclosing the contents of any electronic communications obtained in violation of federal law;

**ORIGINAL COMPLAINT**                                                          **Page 17**

    c.      directs Defendant to return to Plaintiff all electronic communications and information unlawfully obtained from Plaintiff (including any copies thereof), whether stored in an electronic format or printed hard copies;

    d.      directs Defendant to cease and desist from engaging in any electronic monitoring, surveillance, or wiretapping of the Company's confidential information and corporate email accounts;

(2)    actual and compensatory damages;

(3)    pre-judgment and post-judgment interest in the maximum amount allowable by law;

(4)    reasonable attorneys' fees and expenses;

(5)    reasonable experts' fees and expenses;

(6)    costs and disbursements of court; and

(7)    any other or further relief, at law or in equity, to which Plaintiff may be entitled and which the Court deems just and proper.

Respectfully submitted,

**BICKEL & BREWER**

By:    /s/ Salvatore N. Astorina

William A. Brewer III
Michael L. Smith
Salvatore N. Astorina
750 Lexington Avenue, 14th Floor
New York, New York  10022
Telephone:  (212) 489-1400
Facsimile:  (212) 751-2849

**ATTORNEYS FOR PLAINTIFF**

5328026.6
2207-02