UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

№ 15-CV-01566 (JFB)(GRB)

---

INTELLIPAYMENT, LLC.,

Plaintiff,

VERSUS

MICHAEL TRIMARCO,

Defendant.

---

**MEMORANDUM AND ORDER**
March 29, 2016

---

JOSEPH F. BIANCO, District Judge:

On March 25, 2015, plaintiff IntelliPayment LLC ("IntelliPayment" or "plaintiff") filed this action against defendant Michael C. Trimarco ("Trimarco" or "defendant"). On April 16, 2015, Trimarco filed an answer, a counter-claim against plaintiff, and a third-party complaint against Pepper Hamilton LLP, Meltzer LLP and Fred Meltzer (together, "Meltzer"), CJM Investments, Hull Street Group, Eric Schlanger ("Schlanger"), John Does 1-20, Christopher Meyers, Mickey Cavuoti ("Cavuoti"), and Barclays Capital Inc. ("Barclays") (together, the "third-party defendants"). On June 5, 2015, Trimarco filed an amended third-party complaint (the "Trimarco Complaint").

Before the Court are motions to dismiss the Trimarco Complaint filed on July 17, 2015 by plaintiff and third-party defendants Meltzer, Barclays, Cavuoti, and Schlanger, (the "moving third-party defendants"), as well as Trimarco's motion to disqualify plaintiff's counsel[1] and Cavuoti's counsel.

For the reasons discussed below, the plaintiff's motion to dismiss the counter-claim is granted. However, the Court grants defendant leave to amend his counter-claim against plaintiff. The moving third-party defendants' motions to dismiss are granted without prejudice to defendant bringing the

---

[1] Plaintiff's counsel, Michael Lee Smith, also currently represents third-party defendant Schlanger. Smith's notice of appearance was not entered until July 1, 2015, after defendant's motion to disqualify was submitted to the Court. As discussed, *infra*, the Court nevertheless considers defendant's disqualification arguments as they relate to Schlanger's representation because defendant raised them in his reply in support of his motion to disqualify.

1

claims in a separate action. Defendant's motion to disqualify is denied.

I. BACKGROUND

A. Facts

The following facts are taken from the plaintiff's complaint and the Trimarco Complaint and are not findings of fact by the Court. Instead, the Court will assume the allegations to be true and, for purposes of the pending motions to dismiss, will construe them in a light most favorable to the defendant, the non-moving party.

On March 25, 2015, plaintiff filed a three-count complaint against Trimarco, a former IntelliPayment owner, seeking damages and injunctive relief for his alleged hacking of IntelliPayment's computer systems. The complaint alleges that Trimarco "illegally obtained the ability to access [IntelliPayment]'s accounts" and without authorization, "clandestinely reviewed, intercepted, and monitored [IntelliPayment]'s confidential information," (Compl. ¶ 27), in violation of the Stored Communications Act, 18 U.S.C. §§ 2701-2712 (the "SCA"), the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2522 (the "Wiretap Act"), and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (the "CFAA").

IntelliPayment, which is the leading provider of bi-weekly payment products for the automobile lending industry, is a New York limited liability company that was formed in 2006 by Cavuoti, Trimarco, and Scott Olsen. (Compl. ¶¶ 5-6.) Cavuoti, Trimarco, and Olsen were originally owners of IntelliPayment, but Olsen ceased ownership at the end of 2007, and by 2011, Trimarco's ownership interest was reduced to 5%. (*Id.* ¶ 8.) In August 2014, IntelliPayment purchased the remainder of Trimarco's ownership interest. (*Id.*) The complaint alleges that, in 2014, Trimarco "embarked on a disruptive course of action designed to force [IntelliPayment] to increase the terms of the buyout of his previously held interest" in IntelliPayment. (*Id.* ¶ 13.) Trimarco allegedly accessed IntelliPayment's computer and information systems without authorization, including by illegally impersonating Cavuoti and others. (*Id.* ¶¶ 13, 20-28.)

On April 16, 2015, defendant filed a *pro se* pleading entitled "Answer" that contained counter- and cross-claims against IntelliPayment and the third-party defendants. On June 5, 2015, without obtaining leave of the Court, defendant filed an amended complaint alleging claims against plaintiff, the named third-party defendants, and John Does 1-20. In the Trimarco Complaint, defendant alleges that the third-party defendants "together have acquired interests and control of IntelliPayment in furtherance of racketeering activity involving the corruption of the enterprise IntelliPayment, LLC to the detriment of Trimarco . . . and the public at large who are effected by their fraudulent conduct." (Trimarco Compl. ¶ 1.) Trimarco brings claims for violation of federal RICO and securities statutes, violation of the Electronic Fund Transfer Act, 15 U.S.C.A. § 1693 (the "EFTA"), and violation of the Prohibition of Unlicensed Money Transmitting Businesses, 18 U.S.C.A. § 1960, as well as state law claims of fraud, conversion, breach of fiduciary duties, breach of contract, unjust enrichment, negligence, failure to supervise, aiding and abetting a breach of fiduciary duty, misappropriation of distributions and profits, accounting, constructive trust, piercing of the corporate veil, and breach of the covenant of good faith and fair dealing. Trimarco seeks damages and declaratory relief.

B. Procedural History

Plaintiff commenced this action on March 25, 2015. On April 16, 2015, defendant submitted an answer to the complaint and filed a third-party complaint. On June 5, 2015, defendant filed a motion to disqualify plaintiff's counsel, Brewer Attorneys & Counselors, and third-party defendant Cavuoti's counsel, Steven Losquadro. On June 25, 2015, defendant filed an amended third-party complaint. On July 17, 2015, plaintiff and the moving third-party defendants submitted their motions to dismiss and plaintiff submitted its response to defendant's motion to disqualify. On August 18, 2015, defendant submitted his response to plaintiff's motion to dismiss and his reply in support of his motion to disqualify. On August 31, 2015, plaintiff and the moving third-party defendants submitted their replies in support of their motions to dismiss.

II. MOTIONS TO DISMISS

A. Defendant's Counter-Claim against IntelliPayment

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), setting forth a two-pronged approach for courts deciding a motion to dismiss. The Court instructed district courts to first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 556 U.S. at 679. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

Where, as here, the defendant is proceeding *pro se*, "a court is obliged to construe his pleadings liberally. . . ." *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004). A *pro se* complaint, while liberally interpreted, still must "'state a claim to relief that is plausible on its face.'" *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (applying *Twombly* and *Iqbal* to *pro se* complaint).

Plaintiff argues that defendant's counter-claim for "piercing the corporate veil" should be dismissed pursuant to Rule 12(b)(6). Plaintiff argues that the allegations contained in the Trimarco Complaint do not state a claim for liability against IntelliPayment or even allege wrongdoing by IntelliPayment, and accordingly must be dismissed. The Court agrees, and dismisses defendant's counter-claim against plaintiff. The doctrine of "piercing the corporate veil" is not an independent legal claim, but rather "an

3

assertion of facts and circumstances which will persuade the court to impose the corporation obligation on its owners." *Morris v. N.Y. State Dep't of Taxation & Fin.*, 82 N.Y.2d 135, 141 (1993). "The concept is equitable in nature and assumes that the corporation itself is liable for the obligation sought to be imposed. Thus, an attempt of a third-party to pierce the corporate veil does not constitute a cause of action independent of that against the corporation." *Id.*; *see Network Enter., Inc. v. Reality Racing, Inc.*, No. 09-CV-4664 (RJS), 2010 WL 3529237, at *4 (S.D.N.Y. Aug. 24, 2010) (dismissing independent alter ego liability claim); *9 East 38th St. Assocs., L.P. v. George Feher Assocs., Inc.*, 640 N.Y.S.2d 520, 521 (App. Div. 1996) (citation omitted) (under New York law, "a separate cause of action to pierce the corporate veil does not exist independent from the claims asserted against the corporation"). To the extent defendant also brings a general request for injunctive relief against plaintiff, this claim is also dismissed because defendant has not stated a viable counter-claim against IntelliPayment.

### B. Defendant's Claims against Moving Third-Party Defendants

The procedural mechanism for impleader is Rule 14 of the Federal Rules of Civil Procedure. Rule 14(a) allows a defending party to implead a party "who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff." Fed. R. Civ. P. 14(a). "Rule 14 provides a *procedural* mechanism whereby a defendant can have derivative, contingent claims against others not originally parties to the action adjudicated contemporaneously with the claims against it: it does not create new substantive rights against those other parties." *Shafarman v. Ryder Truck Rental, Inc.*, 100 F.R.D. 454, 458 (S.D.N.Y. 1984) (citation omitted). "The Second Circuit has stated that the purpose of Rule 14(a) is 'to avoid two actions which should be tried together to save the time and cost of a reduplication of evidence, to obtain consistent results from identical or similar evidence, and to do away with the serious handicap to a defendant of a time difference between a judgment against him and a judgment in his favor against the third-party defendant.'" *Hicks v. Long Island R.R.*, 165 F.R.D. 377, 379 (S.D.N.Y. 1996) (quoting *Dery v. Wyer*, 265 F.2d 804, 806-07 (2d Cir. 1959)); *accord Mueller v. Long Island R.R.*, No. 89 Civ. 7384 (CSH), 1997 WL 189123, at *6 (S.D.N.Y. Apr. 17, 1997) ("[T]he goal of Rule 14(a) is to promote judicial efficiency by allowing the adjudication of several claims in one action") (citing *Shafarman*, 100 F.R.D. at 459).

It is well-settled in the Second Circuit that an impleader or third-party action must be "dependent on" or "derivative of" the main claim. *Bank of India v. Trendi Sportswear, Inc.*, 239 F.3d 428, 438 (2d Cir. 2000). "[W]hen determining whether impleading a third-party is appropriate, the third-party defendant's liability to the third-party plaintiff must be 'dependent upon the outcome of the main claim' or the third-party defendant must be 'secondarily liable as a contributor to the defendant.'" *Falcone v. MarineMax, Inc.*, 659 F. Supp. 2d 394, 402 (E.D.N.Y. 2009) (quoting *Kenneth Leventhal & Co. v. Joyner Wholesale Co.*, 736 F.2d 29, 31 (2d Cir. 1984)). "The traditional grounds for a third-party action are indemnification, contribution, or subrogation. Regardless of the type of claim asserted, the outcome of the third-party claim must be contingent on the outcome of the main claim." *Id.* (citations and internal quotation marks omitted). "The liability of the third-party defendant must not arise out of a separate and independent claim, and the mere fact that the alleged third-party claim arises from the same transaction or set

4

of facts as the original claim is not enough." *Blais Const. Co., Inc. v. Hanover Square Assocs.-I*, 733 F. Supp. 149, 152 (N.D.N.Y. 1990) (citations and internal quotation marks omitted).

Here, the moving third-party defendants and plaintiff argue that the Trimarco Complaint must be dismissed because the claims against them are wholly unrelated to the claims brought in this action by plaintiff against Trimarco. IntelliPayment brings claims against defendant for violations of the SCA, the Wiretap Act, and the CFAA based on the defendant's alleged unauthorized access of IntelliPayment's information and communications.[2] The moving third-party defendants argue that these claims are entirely unrelated to Trimarco's state and federal claims. Trimarco contends that this case "cannot be decided until the issues of ownership are decided and what role each of the various parties played in depriving Trimarco of his ownership and thus his defenses in this cause of action. Since ownership is a central component of whether or not Trimarco violated any of the Stored Communication allegations, ownership must be determined by the Court. . . . Ownership would be an absolute defense to the allegations in this complaint." (Def. Opp. at ¶¶ 14-15.) Trimarco further asserts that "each third-party defendant played a role in attempting to rob and/or deprive Trimarco of his ownership . . . these parties should be liable to Trimarco for the role they played in the Intellipayment Enterprise stealing Trimarco's ownership." (*Id.* ¶ 16.)

The Court disagrees with Trimarco's arguments, and dismisses the third-party claims in the Trimarco Complaint. It is clear that the claims asserted by Trimarco against the third-party defendants are not derivative of, or dependent on, the plaintiff's complaint here. They concern entirely separate issues (Trimarco's allegations of fraud and racketeering in connection with an ownership dispute between 2007 and 2011) from the issues in the plaintiff's complaint (Trimarco's alleged unauthorized use of IntelliPayment's computer systems in 2014). Moreover, the third-party claims are in no way contingent upon the resolution of the plaintiff's complaint; Trimarco does not (and indeed cannot) claim that the third-party defendants are somehow liable for any of the claims in the plaintiff's complaint.[3] *See Tyson v. Cayton*, No. 88-CV-8398 (JFK), 1990 WL 209381, at *3 (S.D.N.Y. Dec. 10, 1990) (dismissing third-party complaint alleging claims for tortious interference, breach of contract, and antitrust and RICO violations where the third-party complaint claims were unrelated to the plaintiff's complaint and the third-party complaint brought no claim for indemnification or contribution).

---

[2] The plaintiff and moving third-party defendants also argue that the claims in the Trimarco Complaint should be stricken pursuant to Rule 14(a)(1), which requires a third-party plaintiff to obtain leave of the Court when it seeks to file a third-party complaint more than fourteen days after serving its original answer. *See* Fed. R. Civ. P. 14(a)(1) ("A defending party may, as a third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it. But the third-party plaintiff must, by motion, obtain the court's leave if it files the third-party complaint more than 14 days after serving its original answer.") Though defendant filed the Trimarco Complaint on June 5, 2015, nearly two months after serving his original answer on April 16, 2015, the Court, in its discretion, excuses defendant's failure to obtain leave of the Court and does not dismiss the claims on this basis.

[3] The Court does not, and need not at this juncture, reach the moving third-party defendants' arguments in favor of dismissal under Rule 12(b).

### III.  MOTION TO DISQUALIFY

Disqualification is viewed "with disfavor in this Circuit," *Bennett Silvershein Assocs. v. Furman*, 776 F. Supp. 800, 802 (S.D.N.Y. 1991), because it "impinges on parties' rights to employ the counsel of their choice." *Stratavest Ltd. v. Rogers*, 903 F. Supp. 663, 666 (S.D.N.Y. 1995). In particular, the Second Circuit has noted the "high standard of proof" required for disqualification motions because, among other things, they are "often interposed for tactical reasons, and that even when made in the best faith, such motions inevitably cause delay." *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791-92 (2d Cir. 1983) (internal quotation marks omitted); *accord Gov't India v. Cook Indus., Inc.*, 569 F.2d 737, 739 (2d Cir. 1978).

Nevertheless, the disqualification of counsel "is a matter committed to the sound discretion of the district court." *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990). A federal court's power to disqualify an attorney derives from its "inherent power to 'preserve the integrity of the adversary process,'" *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (quoting *Bd. of Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)), and "is only appropriate where allowing the representation to continue would pose 'a significant risk of trial taint.'" *Team Obsolete Ltd. v. A.H.R.M.A. Ltd.*, No. 01-CV-1574 (ILG)(RML), 2006 WL 2013471, at *3 (E.D.N.Y. July 18, 2006) (citing *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2d Cir. 1981)). In exercising this power, courts look for "general guidance" to the American Bar Association ("ABA") and state disciplinary rules, although the Second Circuit has emphasized that "not every violation of a disciplinary rule will necessarily lead to disqualification." *Hempstead Video, Inc.*, 409 F.3d at 132.[4] However, "any doubt is to be resolved in favor of disqualification." *See Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir. 1975).

Defendant moves to disqualify the law firm Brewer Attorneys & Counselors ("Brewer") and Steven E. Losquadro ("Losquadro") in this action. Defendant makes several arguments as to why Brewer and Losquadro have conflicts that require their disqualification. First, defendant argues that Brewer and Losquadro should be disqualified because they cannot represent one shareholder against another on issues regarding IntelliPayment. Second, defendant asserts that Brewer and Losquadro cannot simultaneously represent IntelliPayment, a managing member, and its key officer and CEO in a derivative action because these parties have conflicting interests. Third, defendant insists that Brewer and Losquadro must withdraw altogether because a conflict exists between IntelliPayment and Cavuoti. Finally, defendant argues that Brewer and Losquadro's past representation of IntelliPayment disqualifies it from now representing IntelliPayment and Cavuoti.

Brewer and Losquadro jointly oppose the motion, arguing that defendant has not satisfied his evidentiary burden and that defendant's arguments are based on the erroneous belief that Brewer and Losquadro

---

[4] The Court also notes that Civil Rule 1.5(b)(5) of the Local Rules of the U.S. District Courts for the Southern and Eastern Districts of New York binds attorneys appearing before those courts to the New York State Lawyer's Code of Professional Conduct. Local Civ. R. 1.5(b)(5); *see, e.g.*, *United States v. Hammad*, 846 F.2d 854, 857-58 (2d Cir. 1988); *Polycast Tech. Corp. v. Uniroyal, Inc.*, 129 F.R.D. 621, 625 (S.D.N.Y. 1990) ("[I]n this Court federal law incorporates by reference the Code of Professional Responsibility.").

jointly represent both IntelliPayment and Cavuoti in the litigation.

The Court agrees that defendant has not satisfied his evidentiary burden at this juncture. Defendant has not offered any evidence to support his conclusory assertions that Brewer and Losquadro are conflicted. It is clear that Brewer currently represents IntelliPayment, and that Losquadro separately represents Cavuoti. (*See* Declaration of Steve Losquadro at ¶ 5.) Moreover, Brewer's representation of IntelliPayment does not establish an attorney-client relationship with Cavuoti. *See, e.g.*, *Campbell v. McKeon*, 75 A.D.3d 479, 480-481, 905 N.Y.S.2d 589 (1st Dept. 2010) ("A lawyer's representation of a business entity does not render the law firm counsel to an individual partner, officer, director or shareholder unless the law firm assumed an affirmative duty to represent that individual."); *Talvy v American Red Cross*, 205 A.D.2d 143, 149, 618 N.Y.S.2d 25 (1st Dep't 1994), *aff'd*, 87 N.Y.2d 826 (1995) ("Unless the parties have expressly agreed otherwise in the circumstances of a particular matter, a lawyer for a corporation represents the corporation, not its employees")*; Kushner v. Herman*, 628 N.Y.S.2d 123 (2d Dep't 1995) ("[E]ven if the law firm represented the corporation in question, it would not thereby represent the corporation's individual officers and directors"); *see also* N.Y.S. Bar Ass'n, Comm. on Prof'l Ethics, Op. 978 (2013) ("An attorney acting as general counsel to a closely held corporation . . . represents the entity and not its directors/sole shareholders."). There are no conflicts arising out of a dual or joint representation of IntelliPayment and Cavuoti, a shareholder, because they are separately represented.[5]

Additionally, defendant's argument that Brewer and Losquadro cannot simultaneously represent IntelliPayment, a managing member, and its key officer and CEO in a derivative action because these parties have conflicting interests, is unavailing. Although "[t]here is thought to be an 'inherent conflict' between a corporation and its shareholders, officers, or directors in a derivative action, because, in essence, the plaintiff alleges that those shareholders, officers, or directors harmed the corporation, and thus the corporation's interests are directly opposed to its codefendants' [interests]," *Fox v. Idea Sphere, Inc.*, No. 12-CV-1342 (CM), 2013 WL 1191743, at *22 (S.D.N.Y. Mar. 21, 2013), this is not truly a derivative lawsuit. *See Kriss v. Bayrock Group LLC*, 2014 WL 2212063, at *9 (S.D.N.Y. 2014) ("[I]f parties were able to disqualify their adversaries' long-time corporate counsel simply by pleading that they were suing derivatively, few entities would be immune from the disqualification of their attorneys.").

With respect to defendant's final argument, defendant does not provide any evidence demonstrating communications between Losquadro and himself such that the Court could conclude a disqualifying conflict exists. Losquadro provided an affidavit

---

[5] The Court notes that Brewer attorney Michael Lee Smith entered a notice of appearance on behalf of Schlanger on July 1, 2015, after defendant submitted his motion to disqualify on June 5, 2015. Brewer and Losquadro do not address this representation in their opposition, though defendant raises it in his reply. In any event, in the Court's discretion, the Court does not find that defendant has met the "high standard of proof" required to show that this representation creates a disqualifying conflict. Defendant alleges that Schlanger made personal loans to IntelliPayment and one of its owners, Cavuoti, but also acknowledges that Schlanger filed "an affidavit in state court that he had no ownership." (Def. Reply at 5.) Defendant's statements that Brewer's representation of Schlanger creates a conflict are conclusory, and without more, are insufficient for the Court to conclude that disqualification is warranted.

declaring that defendant's allegations, including that defendant sought his legal advice and possesses "personal sensitive information regarding other legal actions," are false. Losquadro states, among other things, that he has never discussed or consulted defendant regarding individual legal matters, never provided legal advice individually, and has no legal or professional relationship with defendant; rather, the few communications he has had with defendant regarding IntelliPayment derive solely from his role as counsel for Cavuoti. (Losquadro Aff. at 2-3.) Defendant has not provided any evidence to the contrary, and his unsupported allegations fall well short of meeting the high standard for a motion to disqualify. The motion is, accordingly, denied.

### IV. LEAVE TO AMEND

Although defendant has not requested leave to amend the Trimarco Complaint, the Court has considered whether he should be afforded an opportunity to do so. The Second Circuit instructs that a district court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quotation omitted); *see also Aquino v. Prudential Life & Cas. Ins. Co.*, 419 F. Supp. 2d 259, 278 (E.D.N.Y. 2005). Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a party shall be given leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). "This relaxed standard applies with particular force to pro se litigants." *Pangburn v. Culbertson*, 200 F.3d 65, 70 (2d Cir. 1999). It appears unlikely that defendant can allege a plausible counter-claim incorporating a "piercing the corporate veil" theory of liability. However, in light of plaintiff's *pro se* status and in an abundance of caution, the Court finds that defendant should be granted leave to amend his counter-claim against plaintiff in accordance with this order. The amended complaint completely replaces the Trimarco Complaint and therefore must include factual allegations and any claims defendant seeks to pursue against plaintiff. The amended complaint must be clearly labeled "second amended complaint," bear the same docket number as this order, 15-01566 (JFB)(GRB), and shall be filed within thirty (30) days from the date of this order.

### V. CONCLUSION

For the foregoing reasons, plaintiff's motion to dismiss the counter-claim is granted. However, the Court grants defendant leave to amend his counter-claim against plaintiff. The moving third-party defendants' motions to dismiss are granted without prejudice to defendant bringing the claims in a separate action. Defendant's motion to disqualify is denied.


SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated:   March 29, 2016
         Central Islip, NY


\*\*\*

IntelliPayment, LLC is represented by Michael Lee Smith, William A. Brewer, and Salvatore Nunzio Astorina, Brewer Attorneys & Counselors, 750 Lexington Avenue, New York, New York 10022. Defendant proceeds *pro se*. Third-party

8

defendants Meltzer LLP and Fred Meltzer are represented by Joseph A. Vogel, Kaplan Kravet & Vogel, LLP, 630 Third Avenue, 5th Floor, New York, New York 10017. Third-party defendant Mickey Cavuoti is represented by Steven E. Losquadro, 649 Route 25A, Suite 4, Rocky Point, New York 11778. Third-party defendant Barclays Capital Inc. is represented by Christopher Emmanuel Duffy and Demetri Brumis Blaisdell, Boies, Schiller, & Flexner, LLP, 575 Lexington Avenue, New York, NY 10022. Third-party defendant Eric Schlanger is represented by Michael Lee Smith, Brewer Attorneys & Counselors.